# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-2433
_____

United States of America

*Plaintiff - Appellee*

v.

Geovany Gonzalez-Gonzalez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: January 8, 2024
Filed: July 11, 2024
[Unpublished]
_____

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

Geovany Gonzalez-Gonzalez violated the terms of his supervised release. The district court[2] revoked his supervised release and sentenced him to 30 months' imprisonment and two years of supervised release. He challenges the substantive reasonableness of his sentence. We affirm.

## I. *Background*

In 2013, Gonzalez pleaded guilty to conspiracy to possess with intent to distribute 50 grams or more of methamphetamine after being convicted of a felony drug offense. The district court sentenced him to 192 months' imprisonment and 10 years of supervised release but later reduced the term of imprisonment to 97 months. Gonzalez was released in March 2019 and began serving his supervised release.

From June 2019 to September 2022, Gonzalez failed to report for drug testing three times. In March 2023, he tested positive for marijuana and admitted to using a cannabis-derived oil or tea. On April 7, the district court added 20 hours of community service to his supervised-release conditions, to be completed within 45 days. Gonzalez was required to report his completion to the probation office.

Beginning April 17, Gonzalez failed to report for drug testing on three consecutive days. Afterward, he told his probation officer that his stomach hurt so badly he could not get out of bed. The officer told Gonzalez to go to the hospital, and Gonzalez did. On April 25, he tested negative for drugs.

In May 2023, Gonzalez assaulted his wife and his father-in-law. He grabbed his wife around the neck and scratched and bruised her arm. He also chased and threw an object at his father-in-law and either shoved his father-in-law into a wall or shoved furniture against his father-in-law. When police came, Gonzalez barricaded himself inside his home, threatened to cut out his veins, and poured a fire accelerant

---

[2]The Honorable Leonard T. Strand, then Chief Judge, now United States District Judge for the Northern District of Iowa.

on a pile of his wife's clothes. Eventually, he was arrested and charged with state-law misdemeanors.

The probation office filed a petition to revoke Gonzalez's supervision, alleging the above violations. The petition noted that Gonzalez had not yet completed his community service but did not allege a violation based on that incompletion. Gonzalez did not contest any of the violations.

The district court held a revocation hearing on May 31, 2023. It ruled that the most serious offense, Gonzalez's assault against his wife, was a grade A violation. The court also determined that the Sentencing Guidelines range was 27 to 33 months' imprisonment. Gonzalez did not contest these rulings.

Gonzalez accepted responsibility for his conduct in a statement to the court. He also submitted an email from a third party confirming that he had completed 21 hours of community service. In defense of Gonzalez, his counsel pointed out that Gonzalez owned a lead mitigation business, had done well on supervised release until the assaults, and suffered from stomach pain that contributed to his controlled substance and testing violations. The government informed the court that Gonzalez's wife had decided not to press charges against him. She had filed a waiver of prosecution, though under state law the prosecutor still had discretion to prosecute Gonzalez.

The district court considered Gonzalez's criminal history. Specifically, the court observed that Gonzalez had been convicted of possessing cocaine with intent to distribute at age 18. The court also recalled that, in 2013, after having failed to appear for a change-of-plea hearing, he had barricaded himself in a home in a "four-to five-hour standoff with law enforcement." R. Doc. 131, at 22. The court said that the two standoffs "were incredibly dangerous and repeated situations" that gave the court "a lot of concern about how Mr. Gonzalez reacts when things are going poorly." *Id.* at 23. And the court further noted Gonzalez's acts of domestic abuse and stated, "[A]ll of this is quite aggravating." *Id.*

The court also considered Gonzalez's mitigation evidence. It commented that there was no medical evidence showing the nature of Gonzalez's illness. The court acknowledged that Gonzalez was working and trying to perform lead remediation, but it also noted that the exhibits submitted did not show the extent of that work.

In determining the sentence, the court said that it would have sentenced Gonzalez to the top of the Guidelines range but for his acceptance of responsibility. The court then sentenced him to 30 months' imprisonment, the midpoint of the Guidelines range, and two years of supervised release. Gonzalez appeals.

## II. *Discussion*

We review for an abuse of discretion the substantive reasonableness of a sentence imposed after a revocation of supervised release. *United States v. Dixon*, 52 F.4th 731, 733 (8th Cir. 2022). "An abuse of discretion occurs when a court: (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing them commits a clear error of judgment." *Id.* Prior to revoking a term of supervised release, a district court must consider several factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct . . . [and] protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2)(C); *see also id.* § 3583(e)(3). A district court has "wide latitude in weighing relevant factors." *United States v. Wilkins*, 909 F.3d 915, 917 (8th Cir. 2018) (quoting *United States v. Farmer*, 647 F.3d 1175, 1180 (8th Cir. 2011)).

## A. *Consideration of the Prior Standoff*

Gonzalez first argues that the district court "gave significant weight to an improper sentencing factor" when it considered his prior standoff with police. Appellant's Br. at 17. He notes that the prior standoff was remote in time and was not alleged to be a violation of his supervised-release conditions. Furthermore, the

court raised the prior conduct sua sponte and had already considered this conduct at Gonzalez's original sentencing. Gonzalez argues that the court's emphasis on the prior standoff suggests "that the [c]ourt did not consider" his domestic violence "to be commensurate with a typical grade A violation." *Id.* at 20.

The district court did not abuse its discretion in considering Gonzalez's prior standoff with law enforcement. The court was required to consider Gonzalez's "history and characteristics" before revoking his supervised release. 18 U.S.C. § 3553(a)(1); *see also id.* § 3583(e)(3). A court may consider that a defendant has put himself in situations "fraught with danger," *United States v. Beran*, 751 F.3d 872, 875 (8th Cir. 2014), or repeatedly engaged in wrongdoing of the same character, *see United States v. Kreitinger*, 576 F.3d 500, 504 (8th Cir. 2009); *United States v. Larison*, 432 F.3d 921, 922, 924 (8th Cir. 2006). The district court noted the dangerousness of Gonzalez's conduct, suggesting that the court had in mind "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C); *see also id.* § 3583(e).

Additionally, in the context of an initial sentencing, "[i]t is well-settled that factors taken into account in calculating the advisory [G]uidelines range can form the basis of an upward variance . . . and that a sentencing court may vary upward based on criminal history already accounted for by the Guidelines." *United States v. Manuel*, 73 F.4th 989, 993 (8th Cir. 2023). At a revocation hearing, a court possesses the same discretion to consider the defendant's past misconduct; indeed, the court is required to consider the defendant's "history and characteristics." 18 U.S.C. § 3553(a)(1).

As for Gonzalez's claim that his prior standoff was remote in time, we have previously permitted a sentencing court to consider 25 years of criminal history. *United States v. Abrica-Sanchez*, 808 F.3d 330, 335 (8th Cir. 2015). Gonzalez's conduct was considerably more recent than the conduct considered in *Abrica-Sanchez*.

Furthermore, the district court had discretion to consider Gonzalez's prior standoff even though the government did not raise the issue. We have noted that when the same judge presides over an initial sentencing and a later revocation, "the district court [i]s aware of [the defendant's] history and characteristics." *United States v. Franklin*, 397 F.3d 604, 607 (8th Cir. 2005). The court is not required to turn a blind eye to a defendant's known history and focus only on the facts argued by the parties.

Thus, Gonzalez's prior standoff was relevant history that the district court appropriately considered.

B. *Mitigating Factors*

Gonzalez next argues that the district court failed to appropriately weigh the mitigating factors. When "the district court heard argument from counsel about specific § 3553(a) factors, we may presume that the court considered those factors." *United States v. Keating*, 579 F.3d 891, 893 (8th Cir. 2009). Here, the court did not overreach its "wide latitude in weighing [the] relevant factors." *Wilkins*, 909 F.3d at 917 (quoting *Farmer*, 647 F.3d at 1180).

First, Gonzalez argues that the court should have placed more weight on his four years of compliance while on supervised release. He contends that he is not a recidivist violator. But Gonzalez first violated his supervised-release conditions when he failed to report for drug testing on June 25, 2019, merely three months after his release, and he failed to report on two more occasions prior to the spring of 2023. There was no four-year stretch of compliance. Regardless, Gonzalez's counsel argued in mitigation that Gonzalez had complied with supervision for about four years, so we presume that the district court considered the absence of any major violations during that four-year period. *See Keating*, 579 F.3d at 893.

Second, Gonzalez argues that the court should have given more weight to his medical condition and his community service. He asserts that his positive marijuana test resulted from his use of an over-the-counter cannabis product to treat his

stomach pain. After this positive test, the court modified his supervised release conditions to include 20 hours of community service, which he contends that he completed.

The district court considered Gonzalez's reported stomach pain but apparently did not think it was a health condition warranting a reduction in sentence. Gonzalez did not testify about the pain he had experienced, and the court specifically noted the absence of any medical records showing Gonzalez's health problems. The court was not required to accept as proof of a medical condition Gonzalez's report to the probation officer that he was experiencing pain. *See United States v. Marrow Bone*, 378 F.3d 806, 809 (8th Cir. 2004) ("[A] revocation court is not bound to credit the defendant's explanations and the existence of mitigating factors need not result in the sentence requested by the defendant."); *United States v. Hensley*, 36 F.3d 39, 41 (8th Cir. 1994) ("[The defendant] was given an opportunity to offer mitigating circumstances for his violations and to argue that those circumstances weighed against revocation. Although the [d]istrict [c]ourt listened to and explored [the defendant's] explanations, the court was not bound to credit those explanations . . . .").

Additionally, although Gonzalez submitted evidence to the court showing completion of his community service, he did so on May 31, nine days after the expiration of the 45-day period for completion. And there was no indication from the email whether the hours had been completed before the deadline. But regardless, Gonzalez's counsel brought up the community service in argument, and we may presume that the court considered it. *See Keating*, 579 F.3d at 893. The court may have reasonably determined that Gonzalez's completion of *required* community service was not particularly strong mitigation evidence but instead merely overcame the revocation petition's indication that he had failed to complete the community service.

Third, Gonzalez argues that the court should have afforded more weight to the facts that he missed the three drug tests in April because of stomach pain and that he

eventually tested negative for drugs. But as noted above, the court was not required to accept his report of pain as conclusive. And although a negative drug test does lend credence to his explanation for missing the tests, it is not particularly strong mitigation evidence given his later, more serious violations.

Finally, Gonzalez argues that his wife's waiver of prosecution should have been considered in mitigation and that his grade A violation was closer to a grade C violation. But the court said that it would consider the waiver, and we have no reason to doubt that it did. Furthermore, the waiver does not diminish Gonzalez's culpability for his conduct. Gonzalez admitted to assaulting his wife and conceded that this was a grade A violation. The district court was not required to downgrade this violation based on the mercy of Gonzalez's wife.

We hold that the court adequately considered the mitigating factors presented at sentencing.

## III. *Conclusion*

The district court did not abuse its discretion in considering Gonzalez's prior standoff with police, and the court appropriately considered the mitigating factors presented. Therefore, we affirm.

_____